[Cite as *Gerhardstein v. Gerhardstein*, 2021-Ohio-4341.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Karen L. Gerhardstein

    Appellant

v.

Adam R. Gerhardstein

    Appellee

Court of Appeals No.  S-21-002

Trial Court No.  17DR895

**<u>DECISION AND JUDGMENT</u>**

Decided:  December 10, 2021

* * * * *

Lisa M. Snyder, for appellant.

Christopher P. Fiegl, for appellee.

* * * * *

**MAYLE, J.**

## Introduction

{¶ 1} This case involves a dispute over the allocation of proceeds from the sale of

the marital home following a dissolution.  Appellant, Karen Gerhardstein, appeals the

judgment of the Sandusky County Court of Common Pleas denying her request for

reimbursement of $15,000 from appellee, Adam Gerhardstein, for his actions that allegedly diminished the sale price of the home. For the reasons that follow, we affirm.

## Background

{¶ 2} On October 25, 2017, a decree of dissolution was filed, ending the marriage between the parties. As part of the dissolution, the parties agreed that the marital home would be listed for sale with the proceeds being divided evenly. Further, the parties agreed that they would equally divide the property taxes, property insurance, and monthly home equity loan payments, and that appellee would retain possession of the home and pay all utilities while residing in the home. At the time of the dissolution, the home was under a contract for sale.

{¶ 3} Although the dissolution agreement stated that appellee "shall retain possession of the home," the testimony established that appellant was residing in the home at the time the dissolution agreement was finalized. Appellant moved out on November 1, 2017, and appellee moved in and resided in the home until approximately late 2018 or early 2019.

{¶ 4} By May 2018, the potential sale had fallen through. Consequently, appellant filed motions to order the sale of the property and to order appellee to pay rent. On December 11, 2018, appellant filed an additional motion in which she sought her half of the equity in the home. In the December 2018 motion, appellant alleged that appellee was not cooperating with the sale process, and that he was directly responsible for losing

2.

the first sale. One month later, appellant moved for an order to have appellee turn the heat back on in the home. Appellant alleged that appellee had moved out of the house and had turned the heat off, which could damage the home and affect its sale price. The record does not contain a ruling from the trial court on these motions.

{¶ 5} On or around March or April 2019, the property sold. On March 22, 2019, appellant filed a motion seeking reimbursement of at least $15,000 from appellee under the theory that appellee's actions had diminished the value of the property and caused it to be sold for less than it otherwise would have been. The magistrate ordered that $50,000 of the sale proceeds be held in escrow pending resolution of appellant's motion. The trial court subsequently lowered that amount to $30,000. Thereafter, appellee filed his own motion seeking reimbursement from appellant for certain costs related to the sale of the property.

{¶ 6} A hearing on the parties' motions was held before the magistrate on September 26, 2019, and November 18, 2019. Numerous issues were raised during the hearing, including a modification of the court's visitation order, a dispute over the reimbursement of propane expenses, the alleged disappearance of "for sale" signs from the yard, and attorney fees. On appeal, appellant focuses on the trial court's decision not to award her $15,000 for appellee's conduct that she alleged diminished the value of the home. Thus, our recitation of facts will be limited to that issue.

3.

**{¶ 7}** Appellant's position in the trial court was that the home was listed for $324,900. The home eventually sold "as is" for $305,000. As support for her claim that appellee's actions were responsible for the difference in price, appellant cites "Addendum B" to the purchase contract, which states,

> Purchase price reflects approximately $15,000 in repairs to cover difference in condition of home as listed on the MLS #20190182 to it's current condition including appliances washer/dryer/mini refrigerator, drywall repairs/paint, hole in yard, patio wall, master shower leaking and tile repair, vanity mirror, septic/clean/inspection and home warranty.[1]

Appellant testified to the various items on the list, and it was not disputed that appellee replaced the listed washer and dryer with a lower quality pair, that there were numerous instances of damage to the walls from picture hangars being removed, that appellee left a large hole in the yard where he had installed a trampoline, and that appellee removed a stone wall that encircled the patio.

**{¶ 8}** Appellee, for his part, testified that when he moved back into the home on November 1, 2017, he discovered that the home was in complete disarray, and that appellant had removed all of the home's furnishings, including an approximately $3,000 hot tub that was pictured in the real estate listing, but was not specifically listed as part of

---

[1] Appellee presented a second "Addendum B" that was signed 10 days after the original one, and which did not include the language justifying a reduction in price. Appellee, however, did not dispute the validity of the original "Addendum B" relied upon by appellant.

4.

the sale. Notably, the dissolution agreement provided that "All the furniture, furnishings, household goods and appliances, and other items of personal property have been divided. Each party shall retain as their own, free and clear of any claim of the other, all personal property presently in his or her respective possession." Appellee testified that the parties were supposed to divide the property, but that such a division never happened despite several attempts to do so. Appellant, on the other hand, reasoned that all of the home's furnishings were hers because she was in possession of the home at the time of the dissolution agreement.

{¶ 9} Appellee also testified that he offered to purchase the home from appellant on several occasions, finally offering $300,000, which appellant rejected. Appellant acknowledged that she would have agreed to allow appellee purchase her interest in the home for $152,000.

{¶ 10} Following the hearing, on July 27, 2020, the magistrate issued her decision distributing the $30,000 held in escrow. Specifically, the magistrate found that appellant was entitled to $13,880.50, and appellee was entitled to $16,119.50.[2] As part of her 18-page decision, the magistrate determined,

> [Appellant] is requesting to be awarded an amount to cover what she
>
> argues was a decrease in purchase price of the marital home due to the

---

[2] The adjustment to an even $15,000 distribution to each party reflects appellee's obligation to reimburse appellant $54 for half of the cost of testing the well and $37.50 for half of the cost of preparing the deed, and appellant's obligation to reimburse appellee $1,211 for half of the cost of the property taxes paid on February 1, 2019.

5.

condition of the home, damage to the home and specific items missing from the home at the time it was sold. [Appellant] argues that [appellee] swapped out the original washer and dryer pictured in the MLS listing with a less expensive pair. Defendant took a mini-fridge from the home that [appellant] argues should have stayed with the home as she believes that all appliances were included in the sale of the home per the MLS listing. However, [appellee] pointed out that [appellant] felt it was ok to take a wine cooler/mini-fridge from the home that she apparently did not feel was an appliance that was to be sold with the house. She argues that two walls had paint damage when pictures were removed. She testified that [appellee] removed a patio wall and left a hole in the backyard. [Appellant] asserts that all of these issues caused the home to be sold for a lesser amount than if these issues did not exist. [Appellant] failed to provide any values attached to each of these complaints and failed to provide any evidence that these issues caused the home to be sold for a lower price.

{¶ 11} Appellant filed objections to the magistrate's decision in which she argued that, contrary to the magistrate's findings, she provided evidence of the decrease in the sale price of the home associated with appellee's conduct. On February 23, 2021, the trial court overruled appellant's objections and upheld the decision of the magistrate.

{¶ 12} Appellant timely appealed the trial court's February 23, 2021 judgment entry. Following remand from this court, on April 21, 2021, the trial court entered its final and appealable judgment entry adopting the magistrate's decision and ordering the relief to be awarded to the parties.

{¶ 13} Appellant has timely appealed the trial court's April 21, 2021 judgment entry, and now asserts one assignment of error for our review:

> The Trial Court failed to give Appellant credit for the reduction to the proceeds of sale of the former marital residence caused by the Appellee erroneously indicating that the Appellant did not assign a value to her claim.

## Law and Analysis

{¶ 14} In her assignment of error, appellant advances the argument that she is entitled to receive $15,000 from appellee for his actions that devalued the sale price of the home, as proven by the statement contained in Addendum B. Conspicuously absent from appellant's brief is any citation to legal or statutory authority demonstrating that she is entitled to this relief—which is a deviation from the parties' separation agreement—or setting forth the appropriate standard of review for the trial court's decision.

{¶ 15} "It is well-established that an appellate court may not reverse a trial court's property allocation decision absent a showing of an abuse of discretion." *Gomer v. Gomer*, 2017-Ohio-989, 86 N.E.3d 920, ¶ 22 (6th Dist.), citing *Cherry v. Cherry*, 66 Ohio

St.2d 348, 421 N.E.2d 1293 (1981). An abuse of discretion connotes that a trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 16} Here, we find that the trial court's attitude was not unreasonable, arbitrary, or unconscionable. Appellant's argument rests on the premise that Addendum B conclusively proves that the amount of damage done to the property by appellee is valued at $15,000, and that but for the damage the buyers would have paid $320,000 for the home. We, like the trial court, do not find Addendum B to be so persuasive. Instead, we find that the buyers' statement in Addendum B is not reliable in that the justification for the lower price is highly consequential to appellant in this case, but is of entirely no consequence to the buyers, who purchased the home in an "as is" condition. The buyers could have given any reason, or no reason at all, for the lower price, and appellant's and appellee's decision on whether to accept the offer would be no different. Thus, because appellant did not provide any other evidence as to the value of the damage to the home and its impact on the purchase price, we hold that the trial court did not abuse its discretion when it concluded that appellant was not entitled to reimbursement.

{¶ 17} Accordingly, appellant's assignment of error is not well-taken.

### Conclusion

{¶ 18} In sum, the trial court did not abuse its discretion in the allocation of the proceeds from the sale of the marital home, and we affirm the judgment of the Sandusky

County Court of Common Pleas. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE

Gene A. Zmuda, P.J.

_____
Myron C. Duhart, J.                                JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.